Filed 8/11/22  P. v. Tagintsev CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094590 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03145) |
| v. | |
| ALEXANDER TAGINTSEV, | |
| Defendant and Appellant. | |

Nearly a decade ago defendant Alexander Tagintsev pleaded no contest to engaging in lewd and lascivious acts with a child under the age of 14.  He was afterward deported to Kazakhstan, his country of citizenship, based on this conviction.  He now seeks to set aside his conviction using Penal Code[1] section 1473.7, a statute that allows a person out of custody to vacate a conviction "due to prejudicial error damaging the

---

[1]     Undesignated statutory references are to the Penal Code.

1

moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).)

According to defendant, he is entitled to relief under this statute because his counsel failed to inform him that he would be deported if he were convicted and, had she done so, he would not have pleaded no contest. We reject his claim. Like the trial court, we conclude that defendant failed to meet his burden to show his entitlement to relief under this statute. We thus affirm the trial court's order denying relief.

BACKGROUND

In 2012, the Sacramento County District Attorney charged defendant, then a noncitizen resident of the United States, with one count of lewd and lascivious acts with a child under the age of 14 (§ 288, subd. (a)) and two counts of annoying or molesting a child under the age of 18 (§ 647.6, subd. (a)(1)). Defendant later admitted a factual basis existed for the section 288 count, acknowledging that the prosecution's evidence would show that, in 2010, he "touch[ed] the breasts of . . . a child of the age of 13 years old" "with the intent to sexually gratify himself."

Following the charges, defendant's attorney attempted to negotiate a plea that would avoid adverse immigration consequences and limit defendant's time in custody. To that end, after the prosecution offered "a bullet," that is, a year, on the section 288 charge, defendant's counsel countered with three alternatives, e-mailing: "1) Would you giv[e] 364 days instead of 365? [¶] 2) Is there any way that you would offer a [section] 32 [charge] instead? [¶] 3) If no to #2, would you consider offering a misdemeanor instead?" But the prosecution responded that "the offer remains a bullet on the [section] 288 [subdivision] (a) [charge]. We [will] not be offering a misd[emeanor] given defendant's repeated victimizing conduct. There are certainly cases where we'd consider less time or a different charge. This one isn't it." Defendant's counsel persisted: "How about 364[?] It makes no difference to you really but could make a difference to him and

2

his family." Defendant's counsel, in presenting this counter, appeared to believe that a sentence less than 365 days would avoid adverse immigration consequences. But the prosecution stood firm, stating, "[W]e can't tailor a sentence around a person's potential immigration consequences. He could just as easily been offered 3 years based on his conduct, but we had hoped to encourage an early resolution by offering a promise."

Shortly after these negotiations, defendant accepted the prosecution's offer. He pleaded no contest to the section 288 charge in exchange for 365 days in jail and the dismissal of the remaining charges. Before accepting defendant's plea, the trial court asked defense counsel whether she had "discussed with Mr. Tagintsev . . . the direct consequences stemming from his plea." She said she had. The court further asked defendant whether he "underst[oo]d that if you're not a U.S. citizen of the United States, your plea today could result in you being deported from the U.S., excluded from admission to the U.S., or denied citizenship or naturalization." Defendant said he did. After accepting defendant's plea, the court placed him on formal probation for five years and ordered him to serve 365 days in jail.

Based on this conviction, federal authorities afterward initiated proceedings to deport defendant to Kazakhstan, his country of citizenship, and, in 2018, he was deported. Over two years after being deported, and over seven years after being sentenced, defendant moved to vacate his conviction under section 1473.7. He argued that vacatur was appropriate because, "[b]y his recollection, his attorney never talked to him about the possible immigration consequences of a plea but focused on getting a deal with probation and avoiding a possible eight year prison sentence." He added that his attorney should have advised him to plead to a crime without immigration consequences. Defendant attached his own declaration to support his motion. In it, he stated that his counsel never said "what might happen to me with immigration" and never said that "if I took the plea deal I would be deported." He added that "[w]hen we went over the plea deal, I do not remember my public defender saying anything about immigration."

3

Defendant also discussed his interest in remaining in the United States. He noted that he came here in 1998 as a refugee and, because he has four children in the Sacramento area, it is "important that I stay in the United States so that I could be with and support my children." He further noted that "[g]etting a good deal in the criminal court was important. However, what was just as important was making sure that I would stay with my family."

The trial court, agreeing with the prosecution's opposition to defendant's motion, denied the motion. It appeared to question defendant's credibility, stating that his declaration was "after the fact and there are certain motives to make certain statements in the declaration," and it found his declaration failed to show "he was ever misadvised about immigration consequences"; it instead only showed he "d[id]n't recall the issue coming up." The court also questioned defendant's suggestion that his counsel could have reached an immigration-safe settlement with the prosecution. "[I]n a case like this," the court stated, "it doesn't sound like the People would be willing to do that. They weren't even willing to shave one day off the sentence." For these reasons, the court denied defendant's motion.

Defendant timely appealed. (See § 1473.7, subd. (f) ["An order granting or denying the motion is appealable under subdivision (b) of Section 1237 as an order after judgment affecting the substantial rights of a party."].)

DISCUSSION

Section 1473.7, as relevant here, allows persons who are no longer in criminal custody to withdraw a plea with adverse immigration consequences if they can show they would not have entered the plea had they been properly advised in advance of these consequences. In particular, it states: "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential

4

adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a).) If the moving party establishes the requisite grounds for relief by a preponderance of the evidence, "the court shall allow the moving party to withdraw the plea." (*Id.*, subd. (e)(3), (1).)

According to defendant, the trial court here wrongly denied his motion under this statute because "his counsel either did not inform him that he would be deported because of his plea or . . . misinformed [him] as to the immigration consequence of his plea." Defendant adds that his counsel's representation was not only inadequate; it was also prejudicial because, absent his counsel's inadequate representation, he would not have entered the plea in this case.

We apply an independent standard of review in reviewing defendant's challenge to the trial court's decision. (See *People v. Vivar* (2021) 11 Cal.5th 510, 527.) Under this standard, we exercise our " 'independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]" (*Ibid.*) This standard requires us to "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id.* at pp. 527-528.) But "[w]here, as here, the facts derive entirely from written declarations and other documents, . . . there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id.* at p. 528, fn. omitted.)

Applying this standard here, we conclude that defendant's challenge falls short because he has not persuasively shown that his counsel failed to inform him of the potential immigration consequences of his plea. As his counsel's e-mails with the prosecution show, the potential immigration consequences of a conviction were central to the plea negotiations. During the negotiations, the prosecution offered to settle for 365

5

days and a plea to a section 288, subdivision (a) charge. Defendant's counsel, in turn, countered with three alternatives that she appeared to believe would avoid adverse immigration consequences: First, "364 days instead of 365"; second, "offer a [section] 32 [charge] instead"; or third, "offer[ ] a misdemeanor instead." But the prosecution stood firm: "[T]he offer remains a bullet" (i.e., a year) "on the [section] 288 [subdivision] (a) [charge]." Defendant's counsel tried once more, writing, "How about 364[?] It makes no difference to you really but could make a difference to him and his family." But the prosecution remained unmoved, stating, "Sorry, . . . we can't tailor a sentence around a person's potential immigration consequences." Defendant ultimately agreed to the prosecution's terms and, according to his counsel's statements at the plea, his counsel "discussed with Mr. Tagintsev . . . the direct consequences stemming from his plea" and defendant "underst[ood] those things." These contemporaneous records from the time of the plea tend to show that defendant's counsel understood the potential adverse immigration consequences of a plea, negotiated (unsuccessfully) in an effort to avoid these consequences, and discussed these consequences with defendant.

Further tending to show that defendant knew of the potential immigration consequences, defendant told the trial court that he understood his plea could result in deportation. Before accepting defendant's plea, the trial court asked him, "Do you further understand that if you're not a U.S. citizen of the United States, your plea today could result in you being deported from the U.S., excluded from admission to the U.S., or denied citizenship or naturalization?" Defendant, expressing no surprise at the question, said, "Yes." To be sure, as defendant notes, this type of acknowledgment is insufficient in itself to show a defendant was truly aware of the adverse immigration consequences of a plea. (*People v. Patterson* (2017) 2 Cal.5th 885, 889 ["receipt of the standard statutory advisement that a criminal conviction 'may' have adverse immigration consequences (Pen. Code, § 1016.5)" does not "bar[ ] a noncitizen defendant from seeking to withdraw a guilty plea on that basis"].) But when paired with the other evidence discussed above,

6

which tends to show that defendant's counsel knew of the potential immigration consequences and discussed these consequences with defendant, defendant's acknowledgment that he understood he could be deported further undermines his claim under section 1473.7.

Attempting to counter this evidence, defendant maintains "that his appointed counsel never discussed the immigration consequence to a plea and conviction." He appears to concede that "contemporaneous evidence reveals" that his counsel understood that the plea could "lead[ ] to deportation," but he disputes the idea that this "information was given to [him]." He offers nothing, however, to corroborate this self-serving claim—a claim, notably, that contradicts his counsel's own claim that she "discussed with Mr. Tagintsev . . . the direct consequences stemming from his plea" and that defendant made for the first time over seven years after his plea. Considering the counter evidence tending to show that his counsel understood the potential immigration consequences, and so advised him, defendant's bare claim is insufficient in itself to establish his entitlement to relief.

Defendant alternatively contends his counsel might have advised him about potential immigration consequences but, to the extent she did, "the advice given was wrong." He focuses on one of the three sentencing alternatives that his counsel proposed to the prosecution—namely, "364 days instead of 365." According to defendant, "[i]f it was suggested or advised that a 364-day sentence would solve his immigration troubles, that was misadvice." That is because, he argues, although certain offenses are deportable offenses only when the sentence is 365 days or longer, section 288 is a deportable offense no matter the length of the sentence. But even assuming his counsel wrongly advised him that a 365-day sentence would have immigration consequences, while a 364-day sentence would not, that still does not advance his position. In this circumstance, the critical point is that defendant still agreed to the 365-day sentence. He still agreed, that is, to the sentence he understood would have adverse immigration consequences. And so

7

he could not, in that case, complain that the "conviction or sentence is legally invalid due to prejudicial error damaging [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1).)

Considering this record, we decline to set aside the trial court's ruling.  Because defendant had the burden to establish his entitlement to relief under section 1473.7, and because he has not persuasively shown that his counsel failed to adequately advise him of the adverse immigration consequences of his plea, we affirm the trial court's order declining to grant him relief.  Based on this conclusion, we need not address the parties' competing arguments about potential prejudice.

DISPOSITION

The trial court's order is affirmed.


                           /s/
                           HOCH, J.



We concur:



 /s/
HULL, Acting P. J.



 /s/
DUARTE, J.